IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT STOWERS | § | |
| | § | |
| V. | § | CIVIL ACTION  NO.__4:20-cv-1447___ |
| | § | |
| | § | JURY TRIAL |
| | § | |
| AKER BIOMARINE | § | |
| MANUFACTURING, LLC | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT JUDGE:

Comes Now Scott Stowers, Plaintiff herein, complaining of Defendant Aker BioMarine Manufacturing, LLC and files this Plaintiff's Original Complaint.

**I. PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Scott Stowers ("Plaintiff" or "Stowers") is currently a citizen and resident of Montgomery County, Texas and is a former employee of Defendant.  He worked for Defendant in Houston, Harris County, Texas and all relevant events occurred in Houston, Harris County, Texas.

2.      Defendant  Defendant Aker BioMarine Manufacturing, LLC ("Defendant" or "Aker BioMarine") is a business entity which is a foreign for profit corporation doing business in Houston, Harris County Texas.  Defendant is a U.S. company ultimately owned by a foreign entity located in Norway.  Defendant may be served with service by serving its registered agent: CT Corporation System, 350 N. St. Paul Corporation Services Company d/b/a Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas

78701-3218. However, a waiver of service is initially being sent to Defendant's agent and its attorneys.

3.    This court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the Family Medical Leave Act found at 29 U.S.C. §§ 2601 *et. seq*.

4.    All of the acts alleged herein occurred in Houston, Harris County, Texas, and are within the jurisdiction and district of this court.

## II. FACTUAL BACKGROUND

5.    Plaintiff was employed by Defendant in Houston, Harris County, Texas, as a CFO from about November 2015 until his layoff/termination on or about January 29, 2020. Overall, Plaintiff was employed by this specific Defendant full time for over four years, serving as both CFO and interim plant manager.  He had worked for Aker companies for approximately 22 years.

6.    Prior to Plaintiff's termination/layoff by Defendant, Plaintiff Stowers had worked for Defendant for more than twelve (12) months, and for more than 1250 hours during that twelve-month period. Thus, Plaintiff was covered by the FMLA and was on FMLA at the time the decision was made to lay him off and/or terminated him.

7.     Defendant has employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked in Houston, Texas.  In addition, Defendant has more than 500 overall employees. Thus, Defendant was covered by the FMLA.  In fact, he was told by Human Resources representative Michelle Willis and Karen Rosales, who was in charge of charge of payroll and benefits that he qualified for and was told that he qualified for and to apply for FMLA benefits.

8.      Plaintiff had not taken twelve (12) weeks of off work for a serious health condition, or otherwise, during the twelve-month period prior to (a) the onset of his serious health condition, or (b) the time of his layoff/ termination. Thus, Plaintiff was covered by the FMLA.

9.      Plaintiff Stowers' mother fell ill during his tenure at the plant, serving as CFO and as Interim Plant Manager while a search was being conducted for the new Plant Manager. Plaintiff was a primary caregiver for his mother and she was in the hospital for 2+ months, the tail end of which overlapped with Noelia Castro's arrival as new plant manager. Stowers kept Noelia Castro and Michele Willis (head of HR) consistently informed, ahead of time, about Stowers' slightly altered schedule during this time. This slightly altered schedule consisted of a few later arrivals to work due to nights spent at the hospital and a few days leaving early to go to the hospital. Once she was released home, his schedule was also affected. There was never any drop in performance and all deadlines were met as Stowers worked from the hospital and completed at least 40 hours a week.

10.     Because of his care for his mother and her related disabilities, Stowers received a meeting invite from Noelia Castro to discuss his schedule. She questioned his schedule calling it "strange", even though Stowers had kept her and Michele Willis (head of HR) informed.   In fact, Noelia Castro had informed other management employees that she was well versed in FMLA law and, therefore, she should have known her conduct violated FMLA law.  Stowers also kept hearing the term "bad perception" as it pertained to his schedule. As a result, Stowers discussed the Aker Biomarine way of allowing flexible schedules and her reply was that flexible only pertains to overtime.  She explained Stowers should be on site 40 hours a week and use flexibility only with his overtime. She also said

that overtime was expected in his role, a possible violation of the FLSA and arguable basis to establish that he is entitled to overtime pay for all overtime hours worked. .

11.      Stowers' mother was soon released from the hospital to rehabilitative care and eventually home. Michele Willis had informed Stowers of intermittent FMLA. The doctor issued the paperwork and Stowers decided to go on FMLA as he would need to take care of his mother and his prior schedule, without FMLA, had been questioned by the company and their negative attitude about his leave.

12.      Stowers was told by Noelia Castro in a face to face meeting that he was not really a CFO and she wanted other managers to think of him as just a Finance Manager. Stowers complained and notified HR about this harassment and retaliation and Michele Willis later confirmed that Noelia Castro had been by to see Michele about reducing his title.

13.      Over the next few months, Stowers took very few FMLA days because of his work situation and the threats and negative attitude he had received from the company. Stowers always took the necessary measures to ensure his responsibilities were taken care of but ultimately thought that even on FMLA that he would be jeopardizing his job if he took leave days. Noelia Castro would go to HR and ask where Stowers was, even though he had informed her ahead of time. HR would tell Stowers that Noelia Castro came around.  The repeated harassment and retaliation caused severe stress and anxiety to Stowers which created a Hobson's Choice between exercising his rights and taking care of his ill and disabled mother and bearing the wrath of Noelia Castro for exercising his FMLA rights.

14.      After expressing her negative feelings about Stowers and his FMLA leave, Noelia Castro continued a pattern of harassment and retaliation against Stowers.  For

example, Noelia Castro retaliated and harassed Stowers by making false accusations against Stowers. For example, regarding a vacation payout policy that Noelia Castro did not like, she made comments to the entire management team which implicated Stowers as doing something "sneaky and below" saying HQ was not aware of the policy. Stowers spoke out to defend that it was set up years earlier by the prior HR and mimicked the policy of a larger AKER company in Houston. Noelia Cstro began to add to the workload of Stowers. Noelia Castro never took on certain duties the prior plant manager did. She cancelled or did not attend 7 weekly Finance meetings in row with Stowers, making it difficult for Stowers to finalize issues. His department was the only department in the plant that was denied an alternative work schedule. All other departments had chosen this newly rolled out option as a stress reducing measure offered by HR. Noelia Castr herself had a very erratic absentee schedule and would put Stowers in charge to lead meetings in her absence. Moreover, even though his work schedules were questioned, it was Noelia Castro that was out of the office quite often. She often asked Stowers to cover for her as meeting lead. Noelia Castro would offer up the accounting department to new duties within the plant without consulting with Stowers, even though she knew the financial group was stretched and had acknowledged that.

15.     On the few vacation and FMLA days taken by Stowers, he was often given things to do or his department would receive extra requests which they would need to reach out to Stowers for help.

16.     Plaintiff's request for and entitlement to leave under the FMLA was not improper or wrongful. Nevertheless, the company harassed, discrimnated against and retaliated against Stowers in violation of the FMLA.

## III. CAUSES OF ACTION

### <ins>FAMILY MEDICAL LEAVE ACT VIOLATION</ins>

17.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 16 as if fully stated herein.

18.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*.

19.     Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

20.     During the time that Plaintiff was employed by Defendant, he was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2), or as represented to him by Michelle Willis with human resources and/or Karen Rosales, who was in charge of payroll and benefits..  In fact, he was on intermittent FMLA leave at the time the Defendant made the determination to lay him off from his position.

21.     While Plaintiff was employed by Defendant, Plaintiff or a overed family member had an illness that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).

22.     Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the following actions:

- An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.

- An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.

- An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any

unlawful practice under the FMLA.

- All persons, whether or not employers, are prohibited from discharging or in any other way discriminating against any person, whether or not an employee, because that person has —

- - Filed any charge, has instituted, or caused to be instituted, any proceeding under or related to the FMLA.

23.     Prohibited conduct by Defendant in this matter includes discrimination, harassment and refusing to authorize FMLA leave for an eligible employee, discouraging an employee from using FMLA leave, manipulating an employee's work hours to avoid responsibilities under the FMLA, using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions, or, interfering with, restraining, or denying the exercise of rights provided by the FMLA.

24.     Plaintiff Stowers was entitled under the FMLA to take intermittent leave to care for a parent with a serious health condition.  While the leave was approved, it is clear that he suffered discrimination, harassment and retaliation for taking FMLA leave.

25.     It is asserted Defendant laid off and/or terminated Plaintiff's employment for seeking designation and/or leave under FMLA,  which violates the protections of the FMLA as outlined in  29 U.S.C. § 2615(a).

26.  As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost wages, bonuses and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

27.     As a result of this willful violation of the FMLA, Plaintiff requests that he be awarded all damages, to which she is entitled, as outlined in 29 U.S.C. § 2617, including,

but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest.  In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable compensation described above.  Plaintiff also requests any additional equitable relief to which he is entitled, including reinstatement, if warranted and/or feasible.

28.     Plaintiff also requests reasonable attorney's fees and court costs.

29.     Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

30.     Plaintiff is simultaneously asserting administrative claims for violations of the Americans With Disabilities Act and Age Discrimination in Employment Act.  However, he is first required to file his administrative claims with the Equal Employment Opportunity Commission.  He therefore may later seek to add these claims in this matter after the EEOC's administrative review of those claims,

### IV. JURY DEMAND

31.     Plaintiff requests trial by jury on all claims.

### V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff have judgment against Defendant as follows:

1.     Judgment against Defendant for Plaintiff's actual damages, including lost wages,

bonuses, salary and benefits (both back pay and front pay), in an amount to be determined;

2.      Judgment against Defendant for liquidated damages for the maximum amount allowed by law, including doubling of all back pay awarded;

3.      An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of the FMLA and any other applicable claims including reinstatement, if warranted or feasible;

4.      Pre-judgment and post-judgment interest at the maximum amount allowed by law;

5.      Costs of suit, including expert's fees and attorney's fees;

6.      The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.


**Respectfully submitted,**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road, Suite 109**
**San Antonio, Texas  78229-3550**
**Telephone:    (210) 212-7979**
**Facsimile:    (210) 212-5880**

**/s/ Adam Poncio**
**ADAM PONCIO**
**State Bar No. 16109800**
**Southern District I.D. No. 194847**
**Salaw@msn.com**

**ATTORNEYS FOR PLAINTIFF**